**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| V. CAROLYN STEINBERGER, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 1:11-cv-01524-TWP-TAB |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| Defendant. | ) | |

**ENTRY ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment. The Plaintiff in this matter is V. Carolyn Steinberger ("Mrs. Steinberger"), and the Defendant is Continental Casualty Company ("Continental"). This suit arises from a dispute over a long-term care insurance policy ("the Policy") purchased by Mrs. Steinberger from Continental in 1991. In her Complaint, Mrs. Steinberger asks the Court for declaratory relief, specific performance and damages. For the reasons set forth below, Mrs. Steinberger's Motion for Summary Judgment (Dkt. 32) is **GRANTED in part** and **DENIED in part**, and Continental's Motion for Summary Judgment (Dkt. 35) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Mrs. Steinberger Purchases the Policy

Mrs. Steinberger is an 84 year old widow, who lives in Clearwater Commons, a senior living community located in Indianapolis, Indiana, which provides both independent and assisted living apartments. In December 1991, Mrs. Steinberger purchased the Policy in an effort to insure that her long term care needs would be provided for in the event that in the future, she might have to enter a long term care facility. When she purchased the Policy, Mrs. Steinberger

was required to fill out the Policy Application ("the Application") and make certain selections regarding key provisions associated with the Policy, including but not limited to the Benefit Period, the Daily Benefit limit, and the Elimination Period. Mrs. Steinberger chose to have a Benefit Period of four years (1,460 days), a Daily Benefit limit of $70.00, and no Elimination Period. Mrs. Steinberger began and continued to pay the monthly premiums for nearly sixteen years, until her payment obligation was waived in 2007 in accordance with terms of the Policy.

**B. The Policy**

The Policy issued to Mrs. Steinberger in 1991 provided as follows:

> **LONG TERM CARE BENEFIT**
>
> We will pay You the Long Term Care Benefit for each day You require Long Term Care in a Long Term Care Facility. Benefits begin after the Elimination Period and are payable for the length of the Benefit Period for any One Period of Confinement. In order for benefits to be payable, Your Injury or Sickness must require and continue to require Long Term Care.

(Dkt. 36-1 at 7.) Although the body of the Policy used the phrase "One Period of Confinement", an amendment rider on the last page of the Policy replaced the term "One Period of Confinement"[1] with the term "Period of Care" which means the following:

> "Period of Care" means days of Hospital confinement, Long Term Care Facility confinement or Skilled Intermediate or Personal Care or Custodial Care in any setting due to the same or related causes not separated by 180 Calendar days. Benefits need not be payable by the policy during the entire Period of Care. If separated by 180 days or more a new Period of Care begins subject to a new hospitalization requirement, if any, maximum benefit, if any, and Elimination Period, if any.

[1] Before the Policy amendment rider modified the term, "One Period of Confinement" meant the following:

> [C]onsecutive days of Long Term Care received as an inpatient in a Long Term Care Facility or successive confinements due to the same or related causes when discharge from and readmission to the Long Term Care Facility occurs within a period of 180 days. If Long Term Care confinements are separated by 180 days or more, a new period of confinement begins subject to a new hospitalization requirement and Elimination Period, if any.

Dkt. 36-1 at 6.

(Dkt. 36-1 at 10.) The Policy also defined Benefit Period as follows:

> "Benefit Period" means the period of time which You are eligible to receive benefits under the policy. A benefit period begins on the first day that You are eligible for and begin to receive benefits. The benefit period ends when You are no longer eligible to receive benefits or have received the Lifetime Maximum Benefit.

(Dkt. 36-1 at 6.) The Policy defines "Lifetime Maximum Benefit" as follows:

> "Lifetime Maximum Benefit" is the total period for which benefits are payable for Long Term Care Facility Confinements, regardless of whether they are incurred during more than one [Period of Care].

(Dkt. 36-1 at 6.) Finally, the face of the Policy states in bold print as follows:

> **GUARANTEED RENEWABLE FOR LIFE**
> **PREMIUMS SUBJECT TO CHANGE**
>
> We guarantee to renew Your policy as long as the premium is paid within the allowable time. We can make no change to Your policy without Your consent.

(Dkt. 36-1 at 2.)

**C. Mrs. Steinberger Receives Long Term Care Payments from Continental**

In July 2007, Mrs. Steinberger moved into the long term care facility at Clearwater Commons, and began receiving daily assistance with showering and medication set-up and management. In accordance with the terms of the Policy, a Benefit Period started and Continental began to pay per diem benefits related to her long term care at Clearwater Commons. On January 5, 2011, Continental sent a letter to Mrs. Steinberger informing her that her "benefits under the…Long Term Care policy are nearing the policy's Maximum Benefit Period of 1,460 days. The Maximum Benefit Period is scheduled to end on May 14, 2011." Dkt. 36-2 at 9. Additionally, the letter advised Mrs. Steinberger "…The premium, if being waived, will no longer be waived and you will be required to resume paying premiums. Since the benefits will soon be exhausted for this benefit period, you should evaluate your needs to determine whether

or not it would be beneficial to continue this policy." After receiving the letter, Mrs. Steinberger contacted Continental and attempted to make arrangements to resume paying premiums to renew her Policy. On April 28, 2011, Continental informed Mrs. Steinberger's counsel that it would not renew the Policy after May 14, 2011 unless Mrs. Steinberger went without assisted care for 180 days. Subsequently, Continental ceased making long term care per diem benefit payments after May 14, 2011. Thereafter, Continental forwarded a series of letters to Mrs. Steinberger some of which requested a premium payment and some informed her that the waiver period had ceased and she would have to resume paying a premium in order to continue the policy. In October 2011, Mrs. Steinberger filed suit in state court alleging causes of action for declaratory relief, breach of contract and bad faith. The matter was removed to federal court based on diversity jurisdiction. Additional facts will be added as needed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in

search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

Continental acknowledges that the Policy allows additional benefit periods, and that under certain circumstances one Benefit Period could immediately follow another; however, it insists that those circumstances do not apply for Mrs. Steinberger. Continental contends it is entitled to summary judgment on Mrs. Steinberger's claims because it fulfilled its obligations under her Policy when it provided her benefit payments during the four year "Benefit Period." By contrast, Mrs. Steinberger claims the Policy, as written, allows successive "Benefit Periods" within a "Period of Care." As such, Mrs. Steinberger asserts that as long as she remains in a long term care facility, and renews the Policy, Continental is obligated to continue to pay her per diem benefits. Moreover, Mrs. Steinberger says Continental's assertion that the Policy requires her to undergo a 180-day cessation of assisted care before starting a new "Benefit Period" is unfounded. She asserts at the very least, the Policy is ambiguous regarding whether she must undergo a 180 day separation of care between "Periods of Care;" therefore, the Policy should be interpreted in favor of coverage. The Court agrees.

### A. General Law Regarding Insurance Policies

The Court must apply Indiana law to determine reasonable interpretation of the insurance contract. "Under Indiana law, the interpretation of an insurance policy is a matter of law, and

insurance policies are subject to the same rules of construction as any other contracts." *Ocwen Loan Servicing, LLC v. Nationwide Mut. Fire Ins. Co.*, No. 1:07-cv-01449-SEB, 2012 WL 1067854, at *5 (S.D. Ind. Mar. 29, 2012). The Indiana Supreme Court interprets policy terms "from the perspective of an ordinary policyholder of average intelligence." *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). "An ambiguity exists where the provision is susceptible to more than one reasonable interpretation." *Colonial Penn Ins.. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997); *see Benefit Trust Life Ins. Co. v. Waggoner*, 473 N.E.2d 646, 650 (Ind. Ct. App. 1985) ("An insurance contract is ambiguous if reasonably intelligent men, upon reading the contract, would honestly differ as to its meaning."). Where an ambiguity does exist, Indiana courts construe insurance policies strictly against the insurer. *Amer. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996). Thus, in order for a policyholder to prevail in a suit, the policyholder need only present a reasonable interpretation to prevail. *See Amer. Economy Ins. Co. v. Liggett*, 426 N.E.2d 136, 144 (Ind. Ct. App. 1981) ("[W]here any reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that construction will be given."). However, if the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). Finally, courts should "interpret the language of a contract so as not to render any words phrases, or terms ineffective or meaningless." *W.S. Life Ins. Co. v. Acton*, 779 N.E.2d 941, 943 (Ind. Ct. App. 2002).

**B. Policy at Issue**

The Policy issued by Continental refers to two types of benefits: the benefits relating to home health care and the benefits relating to care in a long term care facility. At issue is whether Mrs. Steinberger may receive additional benefits relating to her long term care during a "Period

of Care." Continental contends that the Policy provisions limit Mrs. Steinberger's "Benefit Period" to four years, which it claims has passed. In addition, Continental asserts that Mrs. Steinberger has not established a new "Period of Care" after her initial "Benefit Period" concluded in May 2011 because she has not demonstrated the existence of a 180 day gap in care between periods. As such, Continental claims she is not able to receive benefits past May 14, 2011. *See* Dkt. 36 at 10.

In support of its argument, Continental relies on the definitions of the relevant terms provided in the Policy and in the amendment rider. Specifically, Continental points to the definitions of "Long Term Care Benefit," "Period of Care," and "Benefit Period." As mentioned above, "Long Term Care Benefit" is defined as follows: "[Continental] will pay You the Long Term Care Benefit for each day You require Long Term Care in a Long Term Care Facility. Benefits…are payable for the length of the Benefit Period." Dkt. 36-1 at 6. Continental emphasizes that Mrs. Steinberger selected four years as the length of the "Benefit Period" under her Policy. Furthermore, Continental points out that the Policy states a "Benefit Period" is defined as the "period of time for which You are eligible to receive benefits under the policy." Dkt. 36-1 at 5. Finally, the Policy provides that "Period of Care" "means days of Hospital confinement in a Long Term Care confinement…in any setting due to the same or related causes not separated by 180 calendar days." Dkt. 36-1 at 10.

**C. Interpretation of the Policy at Issue**

With respect to determining the construction of a given policy, the Court must begin with the terms of the insurance policy itself. *See Harris v. Transamerica Life Ins. Co.*, 533 F. Supp. 2d 696, 703 (W.D. Tex. 2007). Under the policy in this case, Continental is obligated to pay Mrs. Steinberger's long term care benefits during the "Benefit Period". The "Benefit Period," as

noted above, selected by Mrs. Steinberger, was to be for four years. *See* Dkt. 36-1 at 3. Continental emphasizes that the Application indicates that an insurer has an option to select period ranges of 2 years, 4 years, 6 years, or for one's lifetime. Thus, the initial issue that must be addressed is whether there is a basis in the Policy for the proposition that it only allows one "Benefit Period" per "Period of Care". Stated differently, does the Policy lend itself to more than one reasonable interpretation regarding the number of "Benefit Periods" a policyholder can receive within a given "Period of Care"?

Mrs. Steinberger argues the Policy is ambiguous in that an ordinary policyholder would interpret the Policy, as drafted by Continental, to allow for successive "Benefit Periods" within a "Period of Care". On the other hand, Continental argues that the Policy is unambiguous with respect to this issue. In particular, Continental asserts that the Policy requires Mrs. Steinberger to start a new "Period of Care" (after the conclusion of her initial "Benefit Period") in order to continue to receive long term care benefits. Furthermore, Continental contends that the Policy sets forth a requirement that the policyholder must forgo assisted care for 180 days in order to establish a new benefit period within a "Period of Care". *See* Dkt. 36 at 9-10. After reviewing the Policy and its provisions, the Court disagrees with Continental's interpretation of the insurance policy and finds that the provisions regarding the 180 day requirement are ambiguous because it has more than one reasonable interpretation. *See Colonial Penn*, 690 N.E.2d at 667 (articulating that if a contractual term is capable of two reasonable interpretations then it is considered to be ambiguous).

To begin, there is no specific provision in the Policy that allows Continental to impose a 180 day "no care" period. The plain terms of the Policy provide that there is no limitation on Mrs. Steinberger's lifetime maximum benefit and the definition of "Period of Care" does not

state that a new "Benefit Period" arises only if there is a 180 day cessation of care. Additionally, the Policy's exclusions concerning long term care confinement do not set forth any requirement for a 180 day period of no care between benefit periods. In other words, the Policy does not make a 180 day gap provision "conspicuous, plain and clear". In *Nat'l Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631 (Ind. Ct. App. 2007), the Indiana Court of Appeals held that when a particular expressed exclusion is inconspicuously placed within a given policy it can amount to an ambiguity in the policy. *Curtis* at 637 (stating that "[t]he structural complexity of the policy as a whole is such that the disputed clause is obscured and a reasonable person would not realize its existence and application, regardless of his duty to read the policy").

That said, regardless of the exclusion terms, Continental maintains the "long-term care benefits of the Policy extend only for the length of the insured's confinement (the Period of Care), in this case, up to a maximum of 4 years (the Benefit Period)." Dkt. 36 at 8. In support of this proposition, Continental cites to *Harris v. Transamerica* in which the Western District of Texas held that a "Period of Confinement cannot exceed the Maximum Benefit Period, which is four years under this Policy." *Harris*, 533 F. Supp. 2d at 704; Dkt. 36 at 8. Mrs. Steinberger asserts that Continental's reliance on *Harris* is misplaced, and the Court agrees. In *Harris*, the Western District of Texas reviewed a similar insurance policy and was faced with determining which benefit period applied to a Period of Confinement: the maximum benefit period (four years) or the lifetime maximum benefit period (eight years). Specifically, the policy in *Harris* provided for monthly benefit payments for convalescent care for as long as the policyholder was confined in a covered facility. *Harris*, 533 F. Supp. 2d at 701. In determining the Period of Confinement, the insurance company defined the term Period of Confinement in its insurance policy as "the maximum amount of time shown in the Certificate Schedule during which benefits

are payable for Convalescent Care Facility Confinements due to Sickness or Injury." *Id.* at 703. The insurance policy defined "maximum benefit period" as "the maximum period of time in any Period of Confinement," while it defined the "lifetime maximum benefit period as "the maximum period of time for which benefits are payable for Convalescent Care Facility confinements, regardless of whether they are incurred during more than one Period of Confinement. *Id.* Finally, the insurance policy incorporated the following into its definition of "Period of Confinement": "A Confinement which follows a previous Period of Confinement will be a continuation of the first confinement, unless the confinements are separated by 6 months or more during which the [Plaintiff] was not confined in any convalescent care facility." *Id.* Subsequently, the *Harris* court concluded that the insurance policy at issue expressly limited the number of years for which coverage was available in a period of confinement as the "maximum benefit period" of four years. *Id.* at 706.

Unlike in *Harris*, the Policy drafted by Continental does not expressly state the direct correlation between the "Period of Care" and the "Benefit Period." Because the Court must interpret the insurance policy "from the perspective of an ordinary policyholder of average intelligence," the Court finds that the use of these terms within the Policy demonstrates that an ambiguity exists concerning the manner in which Mrs. Steinberger can continue to receive long term care benefits. *See Bradshaw*, 916 N.E.2d at 166. Although Continental contends that the "Period of Care" provision expressly sets forth that there must be a separation of 180 days between "Periods of Care," the Policy may also be interpreted to allow for successive "Benefit Periods" during a "Period of Care". Furthermore, Mrs. Steinberger selected an insurance policy with no elimination period, no hospitalization requirement, and an unlimited lifetime maximum benefit. Even assuming the Policy contained a clear separation requirement associated with the

start of a new "Period of Care," this particular policy would not limit the number of "Benefit Periods" she may experience as long as she continues to require long term care from a long term care facility. Accordingly, with respect to Mrs. Steinberger's first claim, the Court concludes that Continental has a duty under the Policy to continue to pay for Mrs. Steinberger's long term care benefits as outlined under the Policy if she renews the Policy by paying the appropriate premiums for a new "Benefit Period".

The Court's conclusion that Mrs. Steinberger may continue to receive per diem benefits by renewing the Policy for another "Benefit Period" is further supported by the fact that the Policy states it is "Guaranteed Renewable for Life, Premiums Subject to Change." Dkt. 36-1 at 1. Specifically, this provision states that "[Continental] guarantee[s] to renew Your policy as long as the premium is paid within the allowable time. We can make no change to Your policy without Your consent." Dkt. 36-1 at 2. Continental argues the effect of this language is that the policyholder may continue to renew the Policy for as long as the premiums are paid, and Continental reserves the right to adjust the premium. Stated differently, the guaranteed renewable provision relates to the Policy itself, and not the underlying benefits offered by the Policy. It is a tenet of Indiana law that an insurance policy must be construed as a whole. That said, when viewing this provision in conjunction with the other terms contained within the Policy, a policyholder of average intelligence could interpret the Policy to allow a policyholder to be able to renew his or her policy for additional "Benefit Periods".

Finally, Mrs. Steinberger and her counsel concede that she selected a four year term "Benefit Period". As such, the Court concludes that Mrs. Steinberger may continue to renew her Policy for another four year "Benefit Period," if she elects to pay the appropriate premiums associated with her specific insurance policy. Accordingly, the Court **GRANTS** Mrs.

Steinberger's motion for summary judgment on this issue and **DENIES** Continental's cross-motion for summary judgment on this issue.

**D. Bad Faith Claim**

Mrs. Steinberger also alleges that Continental breached its duty of good faith and fair dealings when it refused to pay her benefits under the Policy in an effort to avoid its contractual obligations. "Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). While Indiana has recognized such a legal duty, an insurer has a right to dispute coverage in good faith even if it is ultimately determined that the insurer's position is incorrect. *See Spencer v. Bridgewater*, 757 N.E.2d 208, 212 (Ind. Ct. App. 2001). Furthermore, "poor judgment and negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present" in order to establish a plaintiff's bad faith claim against an insurer. *Hoosier Ins. Co. v. Audiology Found. of Amer.*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001); *see Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) ("A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will."). The insured, however, can establish a claim of bad faith against an insurer by showing that insurer denied liability knowing that that there was no rational basis for such a denial. *Erie*, 622 N.E.2d at 520.

Here, Mrs. Steinberger argues that Continental's conduct in denying her coverage amounts to a breach of its good faith because its basis for the denial rests on "nonexistent provisions" within the Policy. *See* Dkt. 33 at 22-23. In addition, Mrs. Steinberger alleges that she did not receive notice as required by the Policy that her premiums would be increased in letters she received in July 2011 and May 2012 from Continental. As such, she contends

Continental's refusal to give her advance notice of premium changes as set forth in the Policy constitutes a breach of its duty. The Court disagrees. First, much of the conduct identified by Mrs. Steinberger, such as the letters sent by Continental, occurred after Mrs. Steinberger filed her bad faith claim, and as such, is not relevant evidence. *See Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38, 42 (Ind. Ct. App. 1999) (stating that "evidence that arises after the filing of the bad-faith claim is not relevant."). At most, the conflicting and confusing letters sent by Continental to Mrs. Steinberger were likely due to a lack of diligent investigation on its part, which the Indiana Supreme Court has ruled is not sufficient, by itself, to support a bad faith claim. *See Erie*, 622 N.E.2d at 520 (articulating that "the lack of a diligent investigation alone is not sufficient to support an award" for a bad faith claim). Thus, Mrs. Steinberger has not presented sufficient evidence that Continental acted with a dishonest purpose in denying benefits to her. The Court finds that Continental's actions in denying benefits to Mrs. Steinberger amount to only a dispute in coverage regarding the requirements of her specific insurance policy. *Id.* ("That insurance companies may, in good faith, dispute claims, has long been the rule of Indiana."). As such, the Court **GRANTS** Continental's cross-motion for summary judgment on Mrs. Steinberger's bad faith claim. Accordingly, Mrs. Steinberger's motion for summary judgment on her bad faith claim against Continental is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Mrs. Steinberger's Motion for Summary Judgment (Dkt. 32) is **GRANTED in part** and **DENIED in part**. Additionally, Continental's Cross-Motion for Summary Judgment (Dkt. 35) is **GRANTED in part** and **DENIED in part**.

SO ORDERED.

Date: 01/04/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Phillip K. Beth
HINKHOUSE WILLIAMS WALSH, LLP
pbeth@hww-law.com

Catherine A. Haines
CANTRELL STRENSKI & MEHRINGER, LLP
chaines@csmlawfirm.com

Barbara A. Jones
CANTRELL STRENSKI & MEHRINGER, LLP
bjones@csmlawfirm.com

Douglas Morrissey
ELENIUS FROST & WALSH
douglas.morrissey@cna.com

Jonathan A.L. Penn
PLEWS SHADLEY RACHER & BRAUN
jpenn@psrb.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

James P. Strenski
CANTRELL STRENSKI & MEHRINGER, LLP
jstrenski@csmlawfirm.com

Theresa M. Willard
PLEWS SHADLEY RACHER & BRAUN
twillard@psrb.com